## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **ANTHONY OMAR BELLE, #02235397** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:21cv468** |
| | § | |
| **DIRECTOR, TDCJ-CID** | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Petitioner Anthony Omar Belle, an inmate confined in the Texas prison system, with the assistance of counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was referred to United States Magistrate Judge Kimberly C. Priest Johnson for findings of fact, conclusions of law, and recommendations for the disposition of the case pursuant to 28 U.S.C. § 636, and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate Judge.

## I. PROCEDURAL BACKGROUND

Petitioner is challenging his two Collin County convictions. In Cause No. 366-80146-2017, Petitioner was charged by indictment with continuous sexual abuse of a child under the age of fourteen (K.C.). (Dkt. #7-1, pp. 47-49). In Cause No. 366-80147-2017, Petitioner was charged by indictment with aggravated sexual assault of a child (C.W.). (Dkt. #7-9, p. 12). On November 1, 2018, the jury found him guilty of both offenses and assessed punishment at thirty-eight years' confinement and twenty years' confinement, respectively, with the sentences to run concurrently. (Dkt. #7-1, pp. 94-95; Dkt. #7-9, pp. 67-68).

Petitioner appealed both convictions, but on motion of his counsel, the appeals were dismissed on April 23, 2019. *Belle v. State*, Nos. 05-18-01384-CR, 05-18-01413-CR (Tex. App. 2019) (memorandum opinion).

1

On April 29, 2020, Petitioner, with the assistance of counsel, filed two applications for state habeas corpus relief, one based on each conviction. (Dkt. #7-20, pp. 36-54; Dkt. #7-25, pp. 45-63). On October 8, 2020, the state habeas trial court entered separate but identical findings of fact in each cause and recommended Petitioner's applications be denied. (Dkt. #7-21, pp. 69-70; Dkt. #7-27, pp. 29-30). On May 26, 2021, the TCCA denied both applications without written orders on the findings of the state habeas trial court without a hearing and on the TCCA's independent review of the records. (Dkt. ##7-17, 7-22).

Petitioner, with the assistance of counsel, filed the instant petition on June 18, 2021. (Dkt. #1). Petitioner asserts the following claims for relief:

1.   Trial counsel provided ineffective assistance by failing to strike a biased juror.

2.   Trial counsel provided ineffective assistance by failing to impeach the testimony of one of the victims, C.W., with her prior statements.

(Dkt. #1, p. 6; Dkt. #1-1, pp. 6-15). The Director filed a response, arguing Petitioner's claims are without merit. (Dkt. #6). Petitioner, with the assistance of counsel, filed a reply. (Dkt. #8).

## II.  STANDARD FOR FEDERAL HABEAS CORPUS RELIEF

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1354, 1367 (5th Cir. 1993); *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996); *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005). In the course of reviewing state

proceedings, a federal court does not sit as a super state appellate court. *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

The prospect of federal courts granting habeas corpus relief to state prisoners has been further limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The new provisions of § 2254(d) provide that an application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) was contrary to federal law then clearly established in the holdings of the Supreme Court; (2) involved an unreasonable application of clearly established Supreme Court precedent; or (3) was based on an unreasonable determination of the facts in light of the record before the state court. *See Harrington v. Richter*, 562 U.S. 86, 97-98 (2011).

The statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts. *Renico v. Lett*, 559 U.S. 766, 773 (2010); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). Furthermore, a state court's factual findings are entitled to deference and are presumed correct unless the petitioner rebuts those findings with clear and convincing evidence. *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir. 2010); *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006); *Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001); *see also Moore*, 313 F.3d at 881 (the statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts). This deference extends not only to express findings of fact, but also to any implicit findings of the state court. *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005)).

A decision by a state court is "contrary to" the Supreme Court's clearly established law if it "applies a rule that contradicts the law set forth in" the Supreme Court's cases. *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). A federal

court's review of a decision based on the "unreasonable application" test should only review the "state court's 'decision' and not the written opinion explaining that decision." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas corpus court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, that application must be objectively unreasonable. *Id.* at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'" on the correctness of the decision. *Richter*, 562 U.S. at 87 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98; *see Johnson v. Williams*, 568 U.S. 289, 293 (2013) (holding there is a rebuttable presumption that the federal claim was adjudicated on the merits when the state court addresses some claims, but not others, in its opinion).

"In Texas writ jurisprudence, usually a denial of relief rather than a 'dismissal' of the claim by the Court of Criminal Appeals disposes of the merits of a claim." *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *see also Henderson v. Cockrell,* 333 F.3d 592, 598 (5th Cir. 2003); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial" signifies an adjudication on the merits while a "dismissal" means the claim was declined on grounds other than the merits). Thus, a state application that is denied without written order by the TCCA is an adjudication on the merits. *See Singleton*, 178 F.3d at 384; *Ex parte Torres*, 943 S.W.2d at 472. Where the decision is a summary denial or affirmance, however, a "federal [habeas] court should 'look through' the unexplained decision to the last related state-court decision that does provide a

relevant rationale" and "presume that the unexplained decision adopted the same reasoning."[1] *Wilson v. Sellers*, 584 U.S. 122, 125 (2018).

In addition to the standard of review imposed by the AEDPA, the petitioner must also show that any constitutional error had a "substantial and injurious effect or influence" on the verdict to be entitled to habeas relief. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The Supreme Court explained that, while the passage of the AEDPA "announced certain new conditions to [habeas] relief," it did not supersede or replace the harmless error standard announced in *Brecht*. *Brown v. Davenport*, 596 U.S. 118, 134 (2022). In other words, a habeas petitioner must also satisfy *Brecht*, even if the AEDPA applies. *See id.* ("[A] federal court must *deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petition has cleared both tests.") (emphasis in original).

Additionally, federal habeas relief is foreclosed if a claim: (1) is procedurally barred as a consequence of a failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722 (1991); or (2) seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288 (1989).

Thus, the federal writ serves as a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

---

[1] The Director may rebut this presumption by showing that the most recent state court's unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were argued or supported by the record that the state court reviewed. *See Wilson*, 584 U.S. at 125-26; *Wesson v. Dir., TDCJ-CID*, No. 1:19-CV-00187-H, 2022 WL 3928513, at *3 (N.D. Tex. Aug. 30, 2022), *appeal dismissed sub nom. Wesson v. Lumpkin*, No. 22-10990, 2023 WL 2881423 (5th Cir. Mar. 10, 2023).

### III. ANALYSIS

Petitioner asserts ineffective assistance of counsel claims. A petitioner who seeks to overturn his conviction on the grounds of ineffective assistance of counsel must prove entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995). Ineffective assistance of counsel claims are governed by the Supreme Court's standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* provides a two-pronged standard, and the petitioner bears the burden of proving both prongs. *Id.* at 687.

Under the first *Strickland* prong, the petitioner must show counsel's performance was deficient. *Id.* To establish deficient performance, he must show "counsel's representation fell below an objective standard of reasonableness," with reasonableness examined under professional norms prevailing at the time counsel rendered assistance. *Id.* at 688. The *Strickland* court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight . . . .

*Id.* at 689 (citations omitted). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted).

Under the second prong of the *Strickland* test, the petitioner must show his attorney's deficient performance resulted in prejudice. *Id.* at 687. To satisfy the prejudice prong, the habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. An ineffective assistance of counsel claim fails if a petitioner cannot satisfy either the deficient performance or prejudice prong; a court need not evaluate both if he makes an insufficient showing as to either. *Id.* at 697.

In addition to applying the *Strickland* two-prong test, a federal habeas court must review a state petitioner's ineffective assistance of counsel claim "through the deferential lens of [28 U.S.C.] § 2254(d)." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). Reviewing Petitioner's ineffective assistance of counsel claim through the lens of the AEDPA means that he has a higher bar to exceed in order to prevail. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). Moreover, unreasonableness under *Strickland* and under § 2254(d) are not the same. First, "[t]he *Strickland* standard is a general one, so the range of reasonable applications is substantial." *Id.* Second, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* The Court must consider not only whether the state court's determination was incorrect, but also "whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Thus, in light of the deference accorded by § 2254(d), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101.

Furthermore, a petitioner's allegations of ineffective assistance of counsel must be supported by the record. *United States v. Johnson*, 679 F.2d 54, 58-59 (5th Cir. 1982). More specifically, conclusory statements are insufficient to sustain a claim of ineffectiveness. *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001); *see also Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.").

Petitioner's ineffective assistance claims were fully developed during the state habeas proceedings. In response to Petitioner's state habeas applications, trial counsel submitted identical affidavits in each cause number addressing Petitioner's ineffective assistance of counsel claims. (Dkt. #7-21, pp. 32-43; Dkt. #7-26, pp. 40-41; Dkt. #7-27, pp. 1-3). The state habeas trial court addressed and rejected both of Petitioner's ineffective assistance claims, and although it did not expressly cite *Strickland*, its analysis is consistent with the *Strickland* standards.

## A. <u>Failure to Strike Biased Juror (Claim 1)</u>

Petitioner asserts trial counsel provided ineffective assistance by failing to strike a biased juror. (Dkt. #1, p. 6; Dkt. #1-1, pp. 6-20). Specifically, Petitioner argues trial counsel should have struck E.S. "who stated during *voir dire* that [Petitioner] was starting off with a strike against him." (Dkt. #1, p. 6; Dkt. #1-1, p. 8) (italics added).

During *voir dire*, E.S. answered "yes" when asked by trial counsel if Petitioner was "starting out with a strike against him" due to "strong opinions about the charge of sexual assault of a child or child molestation." (Dkt. #7-4, pp. 116-17). Trial counsel did not use a preemptory or for-cause challenge, and E.S. sat on the jury. (Dkt. #7-1, p. 79). In his state habeas applications, Petitioner alleged trial counsel's failure to strike E.S. as a juror constituted ineffective assistance

of counsel. (Dkt. #7-20, p. 41; Dkt. #7-25, pp. 50). In his affidavits filed in response to Petitioner's

state habeas application, trial counsel addressed the claim as follows:

18.  Did counsel construe Juror [E.S.'s] response to his question, "Do you feel that Mr. Belle is starting out with a strike against him," as evincing a bias?

Answer: Juror [E.S.'s] only answer was, "Yes", when asked whether or not she thought that Mr. Belle was starting off with a strike against him. I did not feel that this answer showed her to have a bias because she never said that she could not be fair and not look at all the evidence and listen to all the testimony. She followed up subsequent questions by saying that "beyond a reasonable doubt" to her would mean[] that she had to be 99% sure in order to convict.

19.  Did Juror [E.S.'s] answers to any other questions evince a bias against Applicant?

Answer: I did not find that Juror [E.S.'s] answers to any other questions evinced a bias against Applicant.

20.  Did Juror [E.S.] give any answers that indicated she was not biased against applicant?

Answer: Yes, she did. When asked what she thought "reasonable doubt" meant to her, she stated that percentage wise she had to be 99% sure.

During the State's voir dire, Juror [E.S.], stated that every case is different and that even though she probably would not be seeing any DNA, clothes tested, or maybe even any third-party witnesses, it would depend on the case. I took this to mean that she could look at the evidence presented fairly and unbiased; that she had no preconceived notions as to guilt or innocence.

21.  What factored into counsel's decision not to challenge Juror [E.S.] for cause?

Answer: I spoke to Mr. Belle regarding the jurors; who he would like to keep and who he would like to not have on the jury. We both felt that Juror [E.S.] would be able to look at the evidence without bias and make a decision on the evidence presented.

22.  Did Juror [E.S.] have any qualities or attributes that counsel considered beneficial to applicant?

Answer: I do not remember any qualities or attributes that I considered beneficial to Applicant.

23.    How did Juror [E.S.] compare[] to other jurors who similarly answered the question, "Do you feel that Mr. Belle is starting out with a strike against him?"

Answer: Juror [E.S.] was average when compared with other jurors who answered the same question. Some jurors said that Mr. Belle would be starting out with a strike against him and others said that he would not.

(Dkt. #7-21, pp. 38-39; Dkt. #7-26, pp. 40-41).

The state habeas trial court found the record supported trial counsel's conclusions. (Dkt. #7-21, p. 70, ¶ 7; Dkt. #7-27, p. 30, ¶ 7). The court also found Petitioner failed to rebut the presumption that trial counsel made a sound strategic decision not to strike E.S. (Dkt. #7-21, p. 69, ¶ 3; Dkt. #7-27, p. 29, ¶ 3). Specifically, the state habeas trial court found trial counsel "reasonably concluded" that E.S. "would be a fair and impartial juror." (Dkt. #7-21, p. 69, ¶ 5; Dkt. #7-27, p. 29, ¶ 5). In addition, the court determined Petitioner failed to prove he was prejudiced by trial counsel's strategic decision not to strike E.S. (Dkt. #7-21, p. 69, ¶ 4; Dkt. #7-27, p. 29, ¶ 4). Notably, the state habeas trial court found there was "no record evidence" E.S. "was unfair and partial." (Dkt. #7-21, p. 70, ¶ 8; Dkt. #7-27, p. 30, ¶ 8). Having determined Petitioner failed "to prove by a preponderance of the evidence that counsel rendered ineffective assistance," (Dkt. #7-21, p. 70, ¶ 10; Dkt. #7-27, p. 30, ¶ 10), the state habeas trial court concluded Petitioner's Sixth Amendment right to effective assistance was not violated." (Dkt. #7-21, p. 70, ¶ 11; Dkt. #7-27, p. 30, ¶ 11). The TCCA subsequently denied relief without a written order based on the findings of the state habeas trial court without a hearing and on the TCCA's independent review of the records.

Counsel's actions during *voir dire* are considered to be a matter of trial strategy. *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995). "A decision regarding trial tactics cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be 'so ill

chosen that it permeates the entire trial with obvious unfairness.'" *Id.* (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)).

In conducting the deficient performance analysis in the context of counsel's failure to strike an allegedly partial juror, a court first evaluates whether the juror at issue was actually biased. *See Virgil v. Dretke*, 446 F.3d 598, 608-10 (5th Cir. 2006). The bias determination centers on a juror's own indication that he or she has "such fixed opinions that [he or she] could not judge impartially [the petitioner's] guilt," *Patton v. Yount*, 467 U.S. 1025, 1035 (1984), and whether his or her "views would prevent or substantially impair the performance of his or her duties as a juror in accordance with his or her instructions and oath," *United States v. Scott*, 159 F.3d 916, 925-26 (5th Cir. 1998). The issue of juror bias is a factual finding. *Virgil*, 446 F.3d at 610 n.52 (citing *Patton*, 467 U.S. 1025). Because the question of whether jurors have opinions that disqualify them is "one of historical fact," *Patton*, 467 U.S. at 1037, under AEDPA standards this Court may reject the state court's finding only if Petitioner rebuts the presumption of correctness given to the state court factual findings "by clear and convincing standards," 28 U.S.C. § 2254(e)(1).

Here, the state court explicitly found there was "no record evidence" E.S. "was unfair and partial." (Dkt. #7-21, p. 70, ¶ 8; Dkt. #7-27, p. 30, ¶ 8). In other words, the state court found E.S. was not biased. Petitioner has failed to rebut the state court's findings with clear and convincing evidence. Indeed, the *voir dire* transcript supports the state court's findings that E.S. was not biased. Her answer "yes" to whether she thought Petitioner was "starting out with a strike against him" due to "strong opinions about the charge of sexual assault of a child or child molestation" (Dkt. #7-4, pp. 116-17) "is, at its heart, an honest answer." *Virgil*, 446 F.3d at 609. "[T]he Supreme Court has never required that jurors come ready to serve with a blank slate, without preconception

or understanding of the real world." *Id.* As the Supreme Court noted in *Irvin v. Dowd*, 366 U.S. 717 (1961):

> To hold that the mere existence of any preconceived notion as to guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Id.* at 723; *see also Delaware v. Van Arsdall,* 475 U.S. 673, 681 (1986) ("[T]he Constitution entitles a criminal defendant to a fair trial, not a perfect one.").

During the State's *voir dire*, E.S. acknowledged "[e]very case is different," and if the case did not include any DNA evidence, or clothes that had been tested, or third-party witnesses, it "would depend on the case" whether she felt the State had proved Petitioner's guilt beyond a reasonable doubt. (Dkt. #7-4, pp. 62-63). Furthermore, when asked what "reasonable doubt" meant to her, E.S. stated that "percentage wise" she had to be 99% sure. (Dkt. #7-4, p. 169). Finally, E.S. did not answer in the affirmative when the trial court asked whether anyone on the jury panel could not presume a defendant's innocence, required less than reasonable doubt to prove a defendant's guilt, had an inability to follow the law on a defendant's Fifth Amendment right to remain silent, or believed that a defendant was guilty merely because they had been arrested, charged, or indicted. Dkt. #7-4, pp. 24-29). E.S.'s statement, when considered in context with her entire *voir dire* testimony, does not demonstrate she was biased. To the contrary, E.S.'s testimony reflects her impartiality and ability to set aside any opinion and return a verdict based only on the evidence presented at trial. Furthermore, trial counsel consulted with Petitioner about which jurors he would like and not like on the jury, and Petitioner and trial counsel both felt E.S. would be able to look at the evidence without bias and make a decision on the evidence presented. Based on E.S.'s *voir dire* testimony, and after consultation with Petitioner, trial counsel reasonably concluded E.S.

"could look at the evidence presented fairly and unbiased; that she had no preconceived notions as to guilt or innocence." (Dkt. #7-21, pp. 38, ¶ 20; Dkt. #7-26, p. 40, ¶ 20). As such, trial counsel's decision not to challenge E.S. as a juror was reasonable trial strategy.

Because the record does not show that E.S. could not sit as a fair and impartial juror, and in light of the deference owed to counsel's strategic choices, the record does not demonstrate that trial counsel's failure to strike E.S. fell below an objective standard of reasonableness. Furthermore, because the record does not show that E.S. could not sit as a fair and impartial juror, Petitioner has not shown he was prejudiced by E.S. serving on the jury. As a result, the state court's adjudication of this claim was not contrary to, and did not involve an unreasonable application of, clearly established federal law. Therefore, Petitioner's Claim 1 is without merit and should be denied.

**B.  Failure to Impeach (Claim 2)**

Petitioner next contends trial counsel provided ineffective assistance by failing to impeach the testimony of C.W. with a prior statement that Petitioner never sexually assaulted her. (Dkt. #1, p. 6; Dkt. #1-1, pp. 11-15). Specifically, in a CPS interview in 2015, C.W. stated that she "is not really comfortable around [Petitioner] only because she doesn't really know him, not because he did anything wrong." (Dkt. # 1-1, p. 11; Dkt. #7-21, p. 13; Dkt. #7-27, p. 16).

Petitioner raised this issue in his state habeas applications. (Dkt. #7-20, p. 43; Dkt. #7-25, p. 52). Trial counsel addressed the claim in his affidavits as follows:

24.    Does counsel recognize Attachment Al in applicant's []Memorandum of Law in Support of Application of Writ of Habeas Corpus Pursuant to Tex. Code Crim. P Art. 11.07? If so, does counsel recall reviewing the document?

Answer: I do recognize the Attachment A1. I[t] is from the CPS reports received from the State.

25.    Did counsel make the handwritten notations in Attachment A1?

Answer: I believe I did make the handwritten notation on Attachment A1.

26.    Did counsel receive any other CPS documents related to CW? Did counsel review all of the documents?

Answer: I did not receive any other CPS documents related to CW. I reviewed all the documents that I received from the State.

27.    What, if any, other statements did CW make to CPS? Were they consistent or inconsistent with her statements in Attachment A1?

Answer: CW did make other statements to CPS. They were inconsistent with her statements in Attachment A1.

On page 78 of the CPS report, it states "XX indicated that AP/Anthony participated in the sexual abuse".

On page 98 of the CPS report, it states "CW made an outcry that her uncle Anthony Belle forced her to [give] him a blow job at the age of 11 or 12. She stated in her interview at the CAC that she told Lewis James and he decided not to call the police. Anthony Belle was allowed to continue to come to the family home."

On page 286 of the CPS report, it states "CW denied that Lewis did anything to her. She did tell them that Anthony had [her] give him head one time 2/3 years ago."

28.    What was counsel's strategy on cross-examination of CW?

Answer: The strategy on cross-examination of CW was to put doubt in the minds of jurors by pointing out that no one saw the incident happen and that she did not tell anyone immediately.

29.    What was counsel's opinion of how CW performed during her testimony?

Answer: My opinion of how CW performed during her testimony is that she came across very well. She answered the questions fully, sometimes through tears. When looking at the jury during her testimony, they were paying attention to her every word. Some of them were in tears.

30.    Did that performance have any bearing on how counsel cross-examined CW?

Answer: Her performance had no bearing on how I cross-examined CW.

31.    Did CW's testimony vary from her prior statements on any other matters?
How did CW address any such statements during her testimony?

Answer. CW's testimony varied from her prior statement regarding the
timetable that she told Lewis about the incident with Mr. Belle.

CW addressed the statement when I asked her about the timetable she told
Lewis about the incident with Mr. Belle being different in two separate
interviews. Her answer was "Because I did not remember in the first one.
And I've had time to think about it and reflect on when I told him. And I
told him on that specific day, because he asked me what was wrong
specifically, because I wear my emotion on my face. And he asked me what
was wrong and that he wanted to talk to me and I told him what was really
wrong with me."

32.    What was counsel's opinion of the impeachment value of the statement in
Attachment A1?

Answer: My opinion of the impeachment value of the statement in
Attachment A1 is that in and of itself it does have some value, but its value
is greatly diminished when one reads the other statements CW made
regarding Mr. Belle and the allegations against him.

33.    Does counsel recall deciding not to impeach CW with the statement in
Attachment A1? If so, why did counsel choose not to confront CW with the
statement? If counsel has no recollection, what reasons might counsel have
had for not confronting CW with the statement?

Answer: I do not recall deciding not to impeach CW with the statement in
Attachment A1.

The reason for not confronting CW with the statement would be that her
numerous other statements made regarding the allegations against Mr. Belle
diminished the impeachment value of the statement in Attachment A1.

(Dkt. #7-21, pp. 40-41; Dkt. #7-26, p. 42; Dkt. #7-27, p. 1).

The state habeas trial court made the following findings relevant to this claim:

(1)    Applicant claims his trial counsel rendered ineffective assistance because .
. . (2) he failed to cross-examine one of the complainants, CW, about a
statement she made to a CPS interviewer denying that applicant sexually
abused her.

(2)  Applicant bears the burden of alleging and proving by a preponderance of the evidence facts that, if true, entitle him to relief. *Ex parte Chappell*, 959 S.W.2d 627, 628 (Tex. Crim. App. 1998) (citing *Ex parte Maldonado*, 688 S.W.2d 114, 116 (Tex. Crim. App. 1985)). Applicant failed to sustain his burden in this case.

(3)  Applicant failed to rebut the presumption that counsel made [a] sound strategy choice[] . . . not to cross-examine CW about her prior denial. Therefore, he fails to prove any deficiency in counsel's conduct.

(4)  Also, applicant failed to prove he was prejudiced by . . . counsel's strategic choice[].

. . . .

(6)  Trial counsel reasonably concluded that cross-examining CW about her prior denial would afford applicant little benefit and could prove detrimental to his defense.

(7)  The record supports . . . counsel's conclusion[].

. . . .

(9)  And there is no record evidence that confronting CW with her prior denial prejudiced applicant's defense.

(10)  Applicant fails to prove by a preponderance of the evidence that counsel rendered ineffective assistance.

(11)  Applicant's Sixth Amendment right to effective assistance was not violated.

(Dkt. #7-21, pp. 69-70; Dkt. #7-27, pp. 29-30). The TCCA subsequently denied relief without a written order based on the findings of the state habeas trial court without a hearing and on the TCCA's independent review of the records.

Choices regarding impeachment are generally a matter of trial strategy and may not be second-guessed in a federal habeas corpus proceeding. *See Strickland*, 466 U.S. at 689; *see also Mills v. Armontrout*, 926 F.2d 773, 774 (8th Cir. 1991) (observing that trial counsel's decision to refrain from impeaching a witness was a reasoned choice of trial strategy that was not subject to challenge in an ineffective-assistance claim on federal habeas review); *Laugand v. Cain*, Civil No.

06-5269, 2007 WL 3275127, at *7 (E.D. La. Nov. 6, 2007) (explaining that a decision regarding whether to attempt to impeach a witness "is a matter which calls on counsel's professional judgment and requires him to balance a number of factors, including but not limited to the relative importance of the perceived inconsistencies, the likelihood of whether a witness can explain those inconsistencies, and the possible alienation of jurors by endless disputes concerning what they may consider ultimately inconsequential and time-consuming issues").

Petitioner has failed to establish the state court unreasonably applied *Strickland* in concluding that trial counsel's decision not to use C.W.'s prior denial in an attempt to impeach C.W.—a child sexual abuse victim—was sound trial strategy. Although C.W.'s prior denial was inconsistent with her later outcry and trial testimony, it had questionable impeachment value. As explained by the State's experts during their testimony at trial, delayed disclosure of abuse is typical among child sexual abuse victims. (Dkt. #7-5, pp. 109-10, 149-50). Thus, the jury reasonably could have believed that C.W.'s initial denial was consistent with the behavior of a child abuse victim and in no way impeached her later testimony. Furthermore, on cross-examination, trial counsel impeached C.W.'s credibility with a prior inconsistent statement regarding when she reported the abuse to her step-father. (Dkt. #7-5, p. 139). Petitioner has failed to show that questioning C.W. about her prior denial would have further impeached her credibility and benefited Petitioner's defense. As recalled by trial counsel, the jury was "paying attention to [C.W.'s] every word" and some of them "were in tears." Attempting to attack the credibility of C.W., a vulnerable witness, with a prior statement of questionable impeachment value could backfire and antagonize the jury. It also could have led the State to offer C.W.'s other outcry statements to CPS to refute the charge that C.W.'s allegations were lies or fabrication. *See* Tex. R. Evid. 801(e)(1)(B) (authorizing admission of testifying declarant's hearsay statements to rebut

charge of recent fabrication). Thus, as the state court found, cross-examining C.W. about her prior denial could "prove detrimental" to Petitioner's defense. Trial counsel did not render deficient performance by failing to pursue a trial strategy that had the potential to harm Petitioner's defense. *See Reed v. Vannoy*, 703 Fed. App'x 264, 270 (5th Cir. 2017) (providing counsel is not ineffective for failing to impeach child sexual-abuse victims if impeachment could lead to adverse outcome). Petitioner has not shown trial counsel's performance fell below an objective standard of reasonableness or was so ill-chosen as to permeate the trial with obvious unfairness.

Further, Petitioner has failed to establish the state court unreasonably applied *Strickland* in concluding that Petitioner failed to demonstrate he was prejudiced by trial counsel's failure to impeach C.W.'s testimony with her prior denial. Petitioner has failed to show that but for trial counsel's failure to impeach C.W.'s testimony with her prior denial, there is a reasonable probability that the result of the trial would have been different. As noted above, the denial's impeachment value was minimal at best. Trial counsel had already impeached C.W. with another prior inconsistent statement, and even if trial counsel had confronted C.W. with her prior denial, Petitioner has failed to demonstrate that an additional inconsistency would have damaged her credibility. Given how attentive the jury was to C.W.'s testimony and how emotionally affected some of the jurors were by her testimony, it presumably would have taken something significant to discredit C.W. in the jury's eyes—something more than an inconsistency that could easily be attributed to delayed outcry. Moreover, as previously noted, impeaching C.W. with the denial would have likely resulted in the presentation of additional inculpatory evidence that corroborated C.W.'s trial testimony and highlighted the sexual abuse allegations, which would have benefited the State, not Petitioner.

Having not shown deficient performance or prejudice, Petitioner has failed to demonstrate the state court's rejection of this ineffective assistance of counsel claim involved an unreasonable application of, or was contrary to, the established law of *Strickland*. Petitioner has failed to show there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98. Therefore, Petitioner's Claim 2 is without merit and should be denied.

## IV. CONCLUSION

Petitioner has failed to show his claims have merit. Petitioner has failed to demonstrate trial counsel rendered ineffective assistance under *Strickland*. Specifically, Petitioner has failed to demonstrate that trial counsel's representation fell below an objective standard of reasonableness or that there is a reasonability probability that, but for trial counsel's alleged unprofessional errors, the result of the proceeding would have been different. Above all, Petitioner has failed to show the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *Williams*, 529 U.S. at 402-03, 405-06; *Childress v. Johnson*, 103 F.3d 1221, 1224-25 (5th Cir. 1997). Petitioner has failed to show there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98. Accordingly, Petitioner's habeas petition should be denied and dismissed with prejudice.

## V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Court of Appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). Although Petitioner has not yet filed a notice of appeal, it is respectfully recommended that the Court, nonetheless, address whether Petitioner would be entitled to a

certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (holding that a district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court," noting that "[f]urther briefing and argument on the very issues the court has just ruled on would be repetitious").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a substantial showing of the denial of a constitutional right in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). When a district court denies a motion on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, it is respectfully recommended that reasonable jurists could not debate the dismissal and denial of Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is respectfully recommended the Court find that Petitioner is not entitled to a certificate of appealability.

## VI.  RECOMMENDATION

It is recommended the above-styled petition filed under 28 U.S.C. § 2254 be denied and the case be dismissed with prejudice. It is further recommended a certificate of appealability be denied.

Within fourteen days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(c). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 10th day of May, 2024.**

KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE